She enjoyed an employer-employee relationship under Title VII and the Illinois Human Rights Act with Vaughan Hospitality. Like I said, the EOC is going to cover the Title VII part of that. I would just say that the state court test is substantially similar. The only real difference is that for pregnancy discrimination and sexual harassment, Vaughan Hospitality only needed one employee, unlike 15 under Title VII. So can I ask you, I mean she she winds up with a verdict, after all is said and done, against Hotel Coleman for some things. What, it's about $75,000 is joint and several liability and then there's another approximately $75,000 or so that's just Hotel Coleman. Are they judgment-proof? What what would a victory mean for you? What what else is going to is recoverable that hasn't already been... Sure, no, I don't believe that they're judgment-proof. Hotel Coleman has business and a substantial amount of income. Vaughan Hospitality, which did close, I don't believe is judgment-proof either. We went through some of this during the trial and, you know, tracking down money and where it went. I do not believe they're judgment-proof. So is there a theory that, if we were to rule in your favor and say, yes, on this record you were entitled to summary judgment on the issue whether Vaughan Hospitality had the status of an employer. Never mind, you know, as we know there can be two employers or direct and indirect, but suppose we were to rule for you. What happens on on remand? Okay, so we we take the sexual harassment and pregnancy discrimination and the retaliation issues that didn't, a jury didn't see, and we present those to a jury. A jury can award punitive damages under Title VII. Punitive damages weren't at issue in the previous case. The Human Rights Act does not allow punitive damages, and there was not a jury instruction. I know the court addressed that. So there's conduct, I mean, because it felt like some conduct was already before the jury that you had. Some, some. So what? There is, the the court actually restricted what we were allowed to present to the jury. We're only allowed to go far enough to show that Ms. Frey had a reasonable belief that she was harassed and discriminated against and that her charge of retaliation was in response to that. Under the Human Rights Act we had to show a little bit more than just reasonable belief. We actually had to show that some of it happened, but the court did rein us in. The court didn't allow us to put on the full scope of everything that happened to her there. We never addressed how she felt based on this harassment. We didn't address all the aspects of harassment or the pregnancy discrimination or the loss of a that a jury never got to decide on. And that's what we would be asking a jury to decide on. Now even if we set aside all of the questions about the pretrial order or lack thereof, didn't Judge Tharp use his discretion to independently determine that $13,500, whatever? $520,000. Right, I actually, I mean it was my understanding that he limited to that limited to that amount because that's the amount that we put in the pretrial memo. But he also says and and in addition I mean I think that's what your opponents have argued and I had the same question Judge Rovner does, that even if he was wrong under Civil Rule 54C to worry about what was in the pretrial statement, if he independently decided this is a reasonable estimate of what the back pay should be and he looks at how many hours she typically worked, he looks at how long she typically held jobs, he looks at a bunch of things, right? Right, Your Honor, and I do think that under the Illinois Human Rights Act, the rule is to make a person whole. The judge did say that Ms. Fry looking at her history after being terminated would indicate this amount. I don't think he was basing that on either the correct standard on the Human Rights Act or a full understanding of the scope of the potential damages there. I don't think that he considered the promotion that she would have gotten. All of that was ruled on obviously in Ms. Fry's favor in the Hotel Coleman issue, but that was not presented against Vaughn hospitality because it didn't it didn't reflect the termination. There are some things that went into it that were pre-termination activities, but he didn't say that. Yes, I just I don't think it was based on all of the facts. And as to the prejudgment interest, it seems to me what the district court did was to say there isn't a specified prejudgment interest rate. I'm directed or you know the the guidance I'm getting, he says, is to look at the market rates. Who does look at the market rate? I'm not sure he would have abused his discretion if he had looked at other approaches under Illinois law, but it's hard for me to see that he erred as a matter of law by not taking this nine percent post judgment rate for administrative things that you wanted. So if I might respond to that, prior to 2008, complainants had to go to the Illinois Human Rights Commission. So you file a charge with the Department of Human Rights, you have to go to the Commission. The Illinois Human Rights Act allows for prejudgment and post judgment interest on awards. The Illinois Human Rights Commission relies on the Illinois Administrative Code. It's 5300 1145, right? And that directs you to go to the Illinois Code of Civil Procedure, which is 1303. They use that nine percent rate for prejudgment interest and post judgment. But in their administrative proceedings, not in court proceedings. And after 2008, I think the section 111A4 was enacted or became enacted in January 1st 2008, and that section directs all courts to apply the same remedies that the Commission applies. So there's not a difference. The you're going to get the same rate or the same awards that you get at a Commission as if you go to trial. So there's no reason for it to be inconsistent. And I haven't even seen, we looked at any appellate cases, it's never been challenged, it's certainly never been considered a penalty. It's just that's the rate at the Commission. It would be a surprise to anybody practicing at the Commission that 9% wasn't the appropriate rate. And that issue has not been appealed after 2008 when complainants could go to court, because that's just the rate. You're directed to follow the remedies that are given to the Commission or that the Commission can apply in an instance of a civil rights violation. And there's no reason to diverge from that. In fact, the statute says you have to follow that. And the judge didn't in this case. I would like to reserve my time. Thank you. Certainly, we reserve some rebuttal time. And we will hear from the Commission. Thank you, Your Honor. You're Mr. Kovnett? Kovnett. Kovnett. May it please the Court, my name is Philip Kovnett. I'm here with the EEOC. From the EEOC's perspective, the district court here erred in two separate ways. It was first incorrect to conclude that there was no employer-employee relationship between Vaughan Hospitality and Ms. Fry. It was also incorrect to find that Vaughan Hospitality did not have 15 or more employees for purposes of Title VII's minimum threshold. With respect to the employer-employee relationship, as Judge Wood, you just acknowledged, it's well established that two entities can have a contractual relationship in which they share control over individuals such that they are both deemed the employer of those individuals. And when the issue in a case is whether there is an employer-employee relationship, this court applies this five-factor night test to determine whether such a relationship exists. And the critical factor under that test is the level of control, including the powers of hiring and firing. And it's undisputed in this case that Vaughan Hospitality had absolute, unfettered control over Ms. Fry as well as the other individuals working in the hotel. Can you remind me how many others there were? The parties agreed that there were more than 15. I don't think the record... It's undisputed there are more than 15. And the district court acknowledged that if Ms. Fry is right that there's an employer-employee relationship between herself and Vaughan Hospitality, then Vaughan Hospitality would have more than 15 employees for Title VII purposes. So I don't think... And your position is actually pretty straightforward. If they're the ones who hire, fire, discipline, promote, etc., they count as an employer even if the checks say Hotel Coleman on them. Correct. I mean, it's not just our position. I think it's the control is the critical factor, and that includes the ability to hire, the ability to fire, to determine compensation, direct daily activities. And Vaughan Hospitality had that power over all of the individuals in this hotel. Well, didn't the hotel actually even disclaim or said something along the lines of, we won't interfere with what you're doing? That's precisely accurate. So Hotel Coleman had relinquished this control via this hotel management agreement, such that Vaughan Hospitality had it. And it's especially appropriate to impose liability on Vaughan Hospitality here because it was Vaughan Hospitality's owner and president, Michael Vaughan, who committed the unlawful acts in this case. And so the district court obviously deemed VHI a non-employer in this case. And in doing so, the court didn't apply the Knight factors. So you should talk about Castaway. The district court went off on a different direction looking at Smith against Castaway's family diner. I agree it went off in a different direction. The reliance on Smith was misplaced because the issue in Smith was whether particular individuals were either employees of an organization or owners or proprietors of that same organization. It was not a question of whether there were multiple employers in a particular case. Right. We've had that issue in a number of respects. Law firms, for example, if you're a partner, are you an owner? Are you an employee? Correct. So you could not be covered under Title VII because you're an owner of an organization, or you could not be covered because there is no employer-employee relationship, which could come up in the independent contractor context or in this joint employer context. But the critical question here is whether there was this relationship between Fry and Vaughn Hospitality. And the district court just didn't apply the correct legal inquiry to that question. And I'll just turn to this issue of whether Vaughn Hospitality had 15 or more employees. I think if this court finds that there was an employment relationship between Fry and Vaughn Hospitality, then it's essentially implicit that there was also such a relationship with the other individuals in the hotel. But I would want to clarify, what the district court did in that context was apply this integrated enterprise doctrine from this court's decision in PAPA versus KD Industries. And again, it was just a misplaced analysis because this is not... Nobody said they were integrated. This isn't one of those split yourself into a bunch of different companies to avoid the law. Correct. And it's well established that two entities can jointly share control over employees. They can be separate entities, and that's what we have here. So that the focus on PAPA versus KD Industries was just misplaced. And for those reasons, we believe the district court just analyzed this case incorrectly, and we urge this court to reverse its decision and remand for further proceedings. All right. Thank you very much. Thank you. I hear no questions, so we will turn to Ms. Lindsey. Good morning. Good morning, Your Honors, counsel. May it please the court. I'm Jillian Lindsey. I'm here on behalf of the appellee, Vaughan Hospitality Incorporated. The appellant raises three issues on appeal. Judge Tharp corrected each issue correctly. Now, I'd like to stop you there because when we look at the night test and we look at the extent of the employer's control and supervision, that certainly seems to be the most important factor. And VH had the ability to hire, fire, promote, demote Ms. Frye. VH had control, it would seem, over every aspect of hiring. It fired her. It determined her compensation and other benefits. It supervised, it scheduled, it trained, and it evaluated her work. Not only does VH seem to have complete control, HC even stated in its contract with VH that it would not interfere with VH's control in all matters of work. I think that makes it quite different than some of the other issues that are cited. It's not a mere delegation of authority. It looks like an abdication of authority to the employer. Well, Your Honor, if I can address that, the night test involves five different factors, not just one, and no one factor is determinative. But the first one is, they're weighted, I guess I would say, and the first one is clearly the most important. And we do not believe control is the most important factor. No single factor still is determinative. We believe Judge Tharp made the correct decision by looking at Castaways. But Castaways is about a completely different question. There's no question here whether, you know, Mr. Vaughn is, let's say, a sole proprietor who's the owner of the organization, and do we need his body and the body count for 15 people? It's a company, the question is what her relationship to this company is, not how many people get counted on which side of the employer employee line. Right. With respect to the night factors, the extent of control and supervision was, to a large degree, delegated to Vaughn Hospitality. It was completely delegated. What did Hotel Coleman reserve for itself? Well, they had the yearly reports. They also... Right, so they're a joint employer situation. So Hotel writes the checks, as I acknowledged earlier, and Vaughn has to say, how do you like the job we're doing? But she works for Vaughn. Well, she works for the hotel. She works for Vaughn for the hotel, and Vaughn works for the hotel, just like a subcontractor works for the project, a general contractor works for the project. And that's an interesting point, because that's similar to the Love v. J.P. Cullen case, where this analysis was applied. In that case, the aggrieved employee was employed by a subcontractor, tried to bring additional action against the GC, who removed him from the site and committed the allegedly discriminatory act. And so what does the court look at? The court looks at the night factors, and they come out and say, what is Val Coleman is doing to this employee? They're not telling her what time to come to work. They're not telling her what job to do. They're not training her. They're not disciplining her. They didn't figure out how long a pregnancy leave does she get. They didn't do anything. Well, the hotel provided all the costs of operation for equipment, supplies, fees, licenses, anything that was in place, maintenance. Why is that important for her employer-employee relationship? Well, it's one of the factors of the night test, and it's the guidance that's been given. But it's not the one that is the most important one. And in fact, I think maybe if that one is a more neutral factor, it still doesn't mean that she can't have a duel. I mean, I think you're trying to make it one or the other, and I think she's trying to say, no, it's a both and. And I think the complication with that is that, as we've seen in Papa versus Katie by the circuit, companies frequently contract out to have services provided. But that's a different situation. The situation where you're afraid somebody is evading the law, and you're trying to see if it's one big joint enterprise, is a completely different factual circumstance from saying we start from the proposition that these are two different enterprises. And the question is, does this employee actually have an employer-employee relationship with both of them? To be truthful, if I had to pick one or the other, I would say she's Vaughn's employee, not Coleman's. I think the case is much stronger toward Vaughn, but that's not the issue before us. Correct, that is not the issue before us. The employment agreement, the contract with Vaughn specifies that she is Hotel Coleman. What does the employee handbook that she gets say? The employee handbook is titled the Vaughn Hospitality employee handbook. Right. That's correct. But with respect to... All of the training that the employees received was by VH. Well, Vaughn Hospitality was not in a long-term position with Hotel Coleman. It was a two-year contract. That's another reason why I would look to the remark that Rovner just made. She's pointing out that all the training happened from Vaughn, whether it was a six-month contract or a two-year or a ten-year. During the term of the contract, yes, Vaughn provided the training, but not for every single employee who may have been on before the contract was in effect in 2008. The other point that has to be made is Vaughn Hospitality is a tiny business. It has no tested issue, because if all of the people who are providing services at the hotel work for Vaughn Hospitality, then it has the 15 employees that the EEOC was discussing, which is obviously another statutory coverage. It's not a jurisdictional argument. The Supreme Court tells us in Arbaugh, but it's a statutory coverage point. And so we would have to agree with you that Vaughn is just this nothing, this shell somehow that nobody works for, even though they hire, fire, etc., before we came to know 15 employees. Because if all the hotel people work there, I think even the district court realized that the 15 is met. Right. So the point I would make is that Vaughn Hospitality is an independently owned and operated hotel management company. It provides services for Hotel Coleman and other hotels as well. As a small business, it simply can't succeed in the market if it's not qualified for the few employee exemption under Title VII. I don't, that's not what Congress thought. Congress thought as long as you had 15 employees, and as a matter of fact, state law doesn't even have those numerical things, and the standards for compliance with state law are really quite similar, if not identical, to the standards for federal law. So if you're standing here telling me that American industry can't make it if small businesses have to comply with the anti-discrimination laws, we've got 50 years of history, or 60, to tell us otherwise. Well, with respect to the night factors, going back to them, once again I have to emphasize if the test is changed to one factor being determinative, that's new precedent. If it only comes down to control, that's a new test, and that's a whole new standard from which employers will operate, or entities will operate in business. The fact that the... On the night factors, all that we've got left, it seems to me, is payment, and length of job commitment. And I would say... Go ahead, I think she... Is there anything else with your question? I want to make sure I hear. Sorry. Okay. I know there's... Oh, wait. Go ahead. With the night factors, the following four factors, in terms of the nature and skill required for the job, there's no evidence in the record whatsoever that Ms. Frey obtained any specialized skills on the job or beforehand. That's just not in the record. Responsibility for the cost of... The idea is that all of the training that the employees received was by BH. During the course of the contract. Right. So when she's told, what does it mean in this place to be a guest representative, which I think was her job title, it was Vaughn who was saying, guest representatives do these things. Maybe you answer the phone, maybe you man the desk while people come up with questions, or you give the replacement keys, or you do something. There's some list of things that you do as a guest representative, and Vaughn told her what those were. Vaughn did so, but we would say upon the delegation of authority from Hotel Coleman, at all times... The question is though, does that matter? Hotel Coleman engaged a separate company. And we would say it does matter, because Hotel Coleman at all times was ultimately responsible for the conduct that Hotel Coleman... She's not without recourse here. The remedial purposes of the statutes are being served, and Vaughn Hospitality is jointly and severally liable for the portions of the Illinois Human Rights Act that apply to an entity that doesn't have that same employment requirement. Here the statutes worked. With respect to the delegation of authority, Hotel Coleman could terminate the contract. Her employment agreement... Hotel Coleman could also terminate the contract, and yet that doesn't mean that you're exempt from the anti-discrimination laws for your employees at will. Correct. They can terminate Vaughn Hospitality's contract as well. There's a buyout provision. But I'm just saying kind of, so what? I mean, so they don't have to... They haven't married them forever. All right. That's fine. But in terms of Ms. Frey's employment, she's not on a two-year employment schedule tied to the length of the contract. She's tied to Hotel Coleman, whether or not that contract with Vaughn Hospitality is in place. No, she doesn't have a... When Vaughn fires her, she can't go over to Hotel Coleman and say, Vaughn's action was meaningless. I'm still working for you. Right? Correct. She's fired. I mean, I assume she could make some sort of complaint, but not... Well, but it's not... We just can't... Yeah. It's not because the notice of termination came from Vaughn. That's what everyone expects it to be. Well, Ms. Frey claimed she had an expectation of permanent employment, and in her back pay analysis, when she asked for back pay beyond the sale of the hotel, beyond Vaughn Hospitality's involvement with the hotel, she admitted her employment was tied to the hotel and Hotel Coleman had no relevance to whether Vaughn Hospitality was in place, serving at the pleasure of Hotel Coleman. But of course, the district court's order of back pay, even though it was modest, extends beyond the sale of the hotel. It does, and beyond Vaughn Hospitality's involvement. Right. And that's because... You didn't file a cross-appeal, so that's... No one should have an expectation of forever employment except federal judges. That is true. You are in a very esteemed position with guaranteed employment. But with respect to the other factors, she was always on Hotel Coleman's payroll. Hotel Coleman was responsible for the cost of the operation. All benefits came through Hotel Coleman. Well, it seems to me that's pretty much all that goes, other than costs of operation, the fact that it paid, that HC paid crazed salary, seems to me to be the only two things in the night test that you get. I would also say that the length of job commitment and expectations would weigh in favor of Vaughn Hospitality being a lawyer, because her expectation of employment was to work at the hotel for Hotel Coleman, whether or not Vaughn Hospitality was in place. It was not tied to a contract between Hotel Coleman and Vaughn Hospitality. Okay, if you'd like to wrap up. In conclusion, the appellant raises three issues on appeal. Judge Tharp correctly determined each of those issues. His ruling should be affirmed. Judge Tharp did not abuse his discretion by awarding Ms. Fray back pay damages equal to the amount she demanded in the joint pretrial order, and as you pointed out, an amount he independently deemed reasonable given the record. Judge Tharp did not abuse his discretion by awarding Ms. Fray prejudgment interest at the average prime rate compounding monthly. There is no statutory interest rate that applies to Illinois Human Rights Act, so the prime rate is what should apply. And Judge Tharp correctly ruled that no employee employer relationship existed between Vaughn Hospitality and Ms. Fray. Ms. Fray has received full recourse from her employer, Hotel Coleman, and the purposes of Title VII of the Illinois Human Rights Act have been served here. Judge Tharp's ruling on each issue should be affirmed. Thank you. All right, thank you. Mr. Randolph, anything further? Yes, thank you. With respect to the prejudgment interest rate, I would just point out that the statute does dictate what the courts do as well. Finding differently is going to create an inconsistency. So you're relying, I take it, on this language in the statute that alludes to the measuring it from the time of the violation? Correct. So that's what the and then 111A.4 of the Illinois Human Rights Act directs courts to apply the same thing, the same damages, the same prejudgment interest, in this case, or in this instance, that the Commission does. Directs the state courts, I assume. Right, and this was, of course, a state court issue and the federal courts should be following state law. And the Illinois Human Rights Act. Right, right. So that is present in the statute. There's no reason to create, sort of, a disparity and the act itself is trying to create inconsistency. And right now this is the only ruling that would... If the defendant's argument was correct, then it would mean that a federal court could never use a state judgment interest statute because those statutes are only meant to be When the district court retained jurisdiction over the state court issue, then it was supposed to apply state law to that state court issue, not then divert and apply what you might do in federal court. But I thought your argument was that the federal court was at least entitled, if not obliged, to borrow the state prejudgment interest for the federal law. Maybe that's not what you're arguing. No. 1303 of the Illinois Code of Civil Procedure is what the district court has to follow. Just for the Illinois state claim? Just for the Illinois. Not for Title VII. Because that never got to a jury. Just for Illinois. And as far as the night factors, as far as expectation of employment, when Ms. Fry went there, she inspected to have a job. She expected to be promoted by Mike Vaughn, who said he would promote her. She rejected his advances. That fell through. Obviously she wasn't aware of a contract. That contract could have been extended. She didn't have any idea of any of that. But her expectation was this was going to be a job to help her, her family, her husband's a police officer, they're working class folks. She expected to have employment there. There was no expectation that it would end at any particular moment. Yes, open-ended typically. Thank you. All right, well thank you very much. Thanks to all counsel. We will take the case under advisement.